**This order is SIGNED.**

**Dated: January 10, 2019**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re:<br>  DAVID M. TRAYLOR and JANET D. TRAYLOR,<br>  　　　　　　　Debtors. | Bankruptcy Number: 18-23314<br>Chapter 13<br>Hon. Kevin R. Anderson |
|---|---|
| MEMORANDUM DECISION DENYING CONFIRMATION<br>OF DEBTORS' CHAPTER 13 PLAN (DOCKET NO. 2) | |

At issue is whether the Chapter 13 Debtors can claim on their Means Test a vehicle ownership deduction of $497 for title loan payments of $66.67. The difference to unsecured creditors between these two amounts totals $25,819.80 over the 60-month plan term. Consequently, the Chapter 13 Trustee objected to confirmation asserting that the Debtors' deduction on the Means Test should be limited to $66.67, and therefore the Debtors are not contributing all projected disposable income to the plan as required by 11 U.S.C. § 1325(b).[1] For the reasons set forth below, the Court sustains the Trustee's objection.

The Court held a hearing on plan confirmation on November 2, 2018. Tami Willardson appeared on behalf of the Chapter 13 Trustee, Lon Jenkins (the "Trustee"). Scott T. Blotter

---

[1] All subsequent references to the United States Code are to Title 11 unless otherwise specified.

1

appeared on behalf of the Debtors. The Court heard oral argument from the parties and took the matter under advisement. On January 8, 2019, the Court issued a brief oral ruling at the continued confirmation hearing, denying confirmation of the Plan with a written decision and order to follow.

The Court has considered the parties' briefs, the relevant statutory authority and case law, and has conducted its own independent research of the law. The Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 9014 and 7052.

I.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue is proper in this Court under 28 U.S.C. § 1408.

II.   FINDINGS OF FACT

The facts relevant to the Trustee's Objection to Confirmation are undisputed.[2] On May 8, 2018 the Debtors filed a voluntary Chapter 13 petition.[3] Along with the petition, the Debtors filed a Chapter 13 Plan,[4] Statement of Financial Affairs and Schedules,[5] the Statement of Current Monthly Income, and the Official Form 122C-2 Calculation of Disposable Income.[6]

On Schedule A/B, the Debtors list a 2011 Chevrolet Impala valued at $4,000 (the "Vehicle").[7] On Schedule D, the Debtors list Check City as holding a $5,000 claim secured by the

---

[2] Facts set forth in the Trustee's Brief in Support of Objection to Confirmation (Docket No. 18) were not disputed by the Debtors in the Reply Brief (Docket No. 30).
[3] Docket No. 1.
[4] Docket No. 2.
[5] Docket No. 3.
[6] Docket No. 5.
[7] Docket No. 3.

Vehicle.[8] Schedule D states a debt origination date of 2017 and lists the "nature of the lien" as a "non-purchase money security."[9]

On July 3, 2018 Check City filed Proof of Claim No. 6-1 in the amount of $5,575.46 (the "Claim").[10] The Claim includes a copy of the "Utah Title Loan Agreement" and a copy of the Vehicle's title dated December 27, 2017 that lists Check City as a lienholder. The original loan amount was $5,286 with repayment terms of $772 per month for 12 months at 118.8% interest.

The Debtors' plan proposes to modify Check City's Claim by valuing the Vehicle at $4,000, with this allowed secured claim to be paid at $81 per month at 5% interest.[11] The balance of $1,575.46 will be treated as an unsecured claim, with such claims to receive a *pro rata* distribution of $5,103.[12]

The Debtors' Form 122C-1[13] calculates their annual income to be $77,019.24. This is above the median income for a household of two in Utah.[14] Thus, the Debtors' applicable commitment period is five years, and their projected disposable income is calculated under § 707(b)(2) using Official Form 122C-2.[15] On line 13(a) of Form 122C-2, the Debtors claim vehicle "[o]wnership or leasing costs using IRS Local Standard" of $497.[16] On line 13(b), the Debtors appropriately reduce this expense by $66.67.[17] This results in a net, vehicle ownership deduction

---

[8] Docket No. 3, Sch. D, p. 1.

[9] *Id*.

[10] Proof of Claim No. 6-1.

[11] Docket No. 2 at part 3.2.

[12] *Id.* at part 5.1.

[13] Official Form 122C-1: Chapter 13 Statement of Your Current Monthly Income and Calculation of Applicable Commitment Period.

[14] Docket No. 5.

[15] Official Form 122C-2: Chapter 13 Calculation of Your Disposable Income.

[16] This is the applicable amount for the IRS Local Standards, Transportation Expense Standards, for cases filed between 5/1/18 and 10/31/18.

[17] This is the monthly payment based on the proposed valuation of Check City's collateral at $4,000 divided by 60 months. While $4,000 amortized over 60 months at 5% interest results in a monthly payment of $75.48, the Court will use the $66.67 listed on the Debtors' Form 122C-2, since the higher amount would not alter the Court's ruling.

of $430.33. On line 33(b), the Debtors also take a deduction of $66.67 for the secured debt payment to Check City.

With these deductions, the Form 122C-2 calculates the Debtors' monthly disposable income to be $85,[18] which results in a required return to unsecured creditors of $5,100 ($85 x 60 months). If the Court denies the Debtors' net ownership expense of $430 for the Vehicle, the Debtors' monthly disposable income would increase to $515 ($430 + $85) and require a return to unsecured creditors of $30,900 ($515 x 60 months). This difference of $25,800 is the basis for the Trustee's objection.

III. DISCUSSION

The issue raised by the Trustee's objection is whether an above-median debtor may claim a vehicle ownership expense deduction on the Means Test for a high-interest, short-term, non-purchase money title loan. For the reasons set forth below, this Court is persuaded that the Debtors may not take such a deduction. Consequently, the Debtors are not contributing all disposable income to the Plan and as a result the Plan as proposed cannot be confirmed pursuant to § 1325(b).

    A.     <u>§ 707(b)(2)(A)(ii)(I) and the IRS Local Standards</u>

Section 1325(b)(1)(B) provides that if a trustee or unsecured creditor objects to confirmation of a chapter 13 plan, the court may not confirm the plan unless all the debtor's "projected disposable income" will be applied to make payments to unsecured creditors. Section 1325(b)(2)(A) states that in calculating "disposable income," the debtor may deduct "amounts reasonably necessary to be expended" for maintenance or support of the debtor or a dependent. For above-median debtors, § 1325(b)(3) instructs that reasonable and necessary expenses are

---

[18] All amounts rounded to the nearest dollar.

determined by reference to § 707(b)(2) – the so-called "Means Test." Specifically, § 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's **applicable monthly expense amounts specified under the National Standards and Local Standards**, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .[19]

The National and Local Standards are tables prepared by the IRS that list "standardized expense amounts for basic necessities."[20] Included in the IRS Local Standards is a vehicle ownership deduction that is claimed on line 13 of Form 122C-2. The IRS Local Standards, under the category "Transportation Expense Standards," state: "The ownership costs provide maximum allowances for the **lease or purchase** of up to two automobiles."[21] Thus, the question is whether a non-purchase money title loan on a vehicle is an "applicable monthly expense amount[] specified under . . . the [IRS] Local Standards."[22]

    B.    The Supreme Court's *Ransom* Decision

The Supreme Court in *In re Ransom* examined what constituted an applicable vehicle ownership expense under the IRS Local Standards.[23] In that case, the debtor owned an unencumbered vehicle but claimed the vehicle ownership deduction on his Means Test. The Supreme Court held that the debtor could not claim an ownership deduction when he did not have a vehicle ownership expense.[24]

---

[19] § 707(b)(2)(A)(ii)(I) (emphasis added).
[20] *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 66 (2011).
[21] U.S. Dep't of Justice, *Means Testing*, JUSTICE.GOV (Jan. 7, 2019, 8:51 AM), https://www.justice.gov/ust/means-testing/20180501 (emphasis added).
[22] § 707(b)(2)(A)(ii)(I).
[23] *Ransom*, 562 U.S. 61.
[24] *Id.* at 71.

5

While the facts of *Ransom* are not directly on point with those in this case, the Court takes its cue from the process followed by *Ransom* in interpreting what constitutes an applicable vehicle ownership expense under the IRS Local Standards. First, the Supreme Court defined "applicable" as meaning "appropriate, relevant, suitable, or fit," such that the deduction must qualify under the debtor's particular circumstances. Thus, "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute."[25]

In a footnote, Justice Kagan then commented on the need to avoid interpretations of the Means Test that result in unfair outcomes for debtors with below-median income who are limited to actual expenses on Schedule J rather than the IRS Local Standards:

> This interpretation also avoids the anomalous result of granting preferential treatment to individuals with above-median income. Because the means test does not apply to Chapter 13 debtors whose incomes are below the median, those debtors must prove on a case-by-case basis that each claimed expense is reasonably necessary. If a below-median-income debtor cannot take a deduction for a nonexistent expense, we doubt Congress meant to provide such an allowance to an above-median-income debtor – the very kind of debtor whose perceived abuse of the bankruptcy system inspired Congress to enact the means test.[26]

In the present case, if the Debtors had below-median income, they would be limited to a deduction of only $66.67 for the actual title loan payment. Thus, the Debtors' interpretation results in an anomalous and preferential outcome by allowing debtors who make more (those with above-median income) to pay relatively less to their creditors by allowing a deduction that is greater than the actual car loan payment.

---

[25] *Id.* at 70-71.
[26] *Id.* at 71, n.5.

The Supreme Court next acknowledged that the purpose of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was "to ensure that [debtors] repay creditors the maximum they can afford," and that this "purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment."[27] The Court further remarked that in *In re Lanning*, it had rejected an interpretation of the Means Test that would "deny creditors payments that the debtor could easily make."[28]

The Supreme Court next discussed how the Means Test incorporated the IRS National and Local Standards to determine what constituted reasonable living expenses in Chapter 7 and Chapter 13 consumer cases. The Court observed that the "IRS uses the Standards to help calculate taxpayers' ability to pay overdue taxes," and that the "IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the tables and what the amounts listed in them mean."[29] The Court then turned to the Collection Financial Standards for interpretive assistance with what qualified as an applicable vehicle ownership expense under the IRS Local Standards.

Citing to the Collection Financial Standards, the Court explained that the IRS Local Standards for the vehicle ownership expense are "base[d] . . . on the five-year average of **new and used car financing data** compiled by the Federal Reserve Board."[30] In other words, the vehicle ownership allowance is based on "car financing data," and not on non-purchase money loans secured by vehicles. The Collection Financial Standards further state that if taxpayers do not have a car payment, then they may only claim the operating expense deduction under the Local

---

[27] *Id*. (citations and internal quotations omitted).

[28] *Id*. at 71 (citing to *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010)).

[29] *Id*. at 66 (citation omitted).

[30] *Id*. at 67 (emphasis added). While the current Collection Financial Standards do not contain the quote referenced by the Supreme Court, neither do they state that a different data source is now used for determining the amount of the vehicle ownership expense. Therefore, the Court assumes the data source remains the same.

Standards. Based on its reference to the Collection Financial Standards, the Court ruled that "[b]ecause Ransom owns his vehicle free and clear of any encumbrance, he incurs no expense in the 'Ownership Costs' category of the Local Standards."[31]

Justice Kagan then gave bankruptcy courts the following guidance:

> Although the statute does not incorporate the IRS's [Collection Financial Standards], **courts may consult this material in interpreting the National and Local Standards**; after all, the IRS uses those tables for a similar purpose—to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language.[32]

In his dissent, Justice Scalia criticized the majority's reference to the Collection Financial Standards in interpreting the Means Test. Justice Kagan defended:

> The dissent questions what possible basis except incorporation could justify our consulting the IRS's view, but we think that basis obvious: The IRS *creates* the National and Local Standards referenced in the statute, revises them as it deems necessary, and uses them every day. **The agency might, therefore, have something insightful and persuasive (albeit not controlling) to say about them**.[33]

Thus, the majority in *Ransom* found it appropriate for a bankruptcy court to consider IRS guidance on what qualifies as a vehicle ownership expense so long as the guidelines are not "at odds with the statutory language."[34]

    C.    <u>Applying *Ransom* to Determine Whether a Title Loan is an Applicable Vehicle Ownership Expense Under the IRS Local Standards.</u>

Following the direction given in *Ransom*, the Court is to interpret the Means Test in a way that accomplishes the Congressional intent of ensuring "that [debtors] repay creditors the

---

[31] *Id.* at 73.
[32] *Id.* at 72-73 (emphasis added).
[33] *Id.* at 73, n.7 (emphasis added).
[34] *Id*. at 72-73.

maximum they can afford" so that creditors receive "payments that the debtor could easily make."[35]

Further, as noted in *Ransom*, the vehicle ownership expense in the IRS Local Standards is based on new and used car financing data and not on non-purchase money loans. Thus, for a car loan repayment to be "applicable" under the IRS Local Standards, it should arise in the context of "new and used car financing."[36] Indeed, the IRS Local Standards themselves state: "The ownership costs provide maximum allowances **for the lease or purchase** of up to two automobiles. . . ."[37]

Lastly, as in *Ransom*, the Court considers what the IRS Collection Financial Standards have to say about the vehicle ownership expense:

> The ownership costs, shown in the table below, provide the monthly allowances **for the lease or purchase** of up to two automobiles. A single taxpayer is normally allowed one automobile. For each automobile, taxpayers will be allowed the lesser of:
> a. the monthly payment on the lease or car loan, or
> b. the ownership costs shown in the table below.
>
> If a taxpayer has no lease or car loan payment, the amount allowed for Ownership Costs will be $0.[38]

As made clear in the IRS Local Standards and the IRS Collection Financial Standards, the applicable vehicle ownership deduction is limited to "the lease or purchase of up to two automobiles." If the Means Test only allows an applicable expense deduction as specified in the IRS Local Standards, and if the IRS Local Standards only allow an ownership deduction for the

---

[35] *Id.* at 71 (citing H.R.Rep. No. 109-31, pt. 1, p. 2 (2005); *Hamilton v. Lanning*, 560 U.S. 505 (2010)).

[36] *See In re King*, 497 B.R. 161 (Bankr. N.D. Ga. 2013) ("Since the ownership expense figure is based on only financing data and not the entire panoply of automobile loans, this IRM instruction, which the Supreme Court identified with approval, appears to indicate that the ownership expense likewise only applies to the costs associated with an automobile's acquisition.").

[37] U.S. Dep't of Justice, *Means Testing*, Justice.Gov (Jan. 7, 2019 at 9:40 AM), https://www.justice.gov/ust/means-testing/20180501 (emphasis added).

[38] Internal Revenue Serv., *Local Standards: Transportation*, IRS.Gov (Jan. 7, 2019, 9:45 AM), https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation.

"lease or purchase" of a vehicle, then a non-purchase money security interest is not a specified expense deduction under the IRS Local Standards.

Based on this analysis, the Court finds that non-purchase money loans, such as title loans, are not an applicable monthly expense specified under the IRS Local Standards. Thus, while the Debtors can appropriately deduct the $66.67 title loan payment on the Means Test as a secured debt payment, and thereby retain sufficient funds pay for the Vehicle, the Debtors may not claim the $497 vehicle ownership deduction under the IRS Local Standards.

    D.    <u>Holdings in Other Cases</u>

In its research, the Court found that most bankruptcy courts, and one district court, hold that a debtor may not claim a vehicle ownership deduction for a loan unrelated to the acquisition of the vehicle.[39] In contrast, two bankruptcy courts reached the opposite conclusion.[40]

The most recent court to address the issue is *Feagan v. Townson*.[41] In *Feagan*, the debtor claimed a monthly vehicle ownership deduction of $517 based on a title loan with a monthly payment of $51.43. The bankruptcy court allowed the deduction, and the Chapter 13 trustee appealed. The district court held that after "[a] careful look at the IRS Standards and guidelines, read with *Ransom* in mind," the debtor could not claim a vehicle ownership deduction under the Means Test for the title loan on his vehicle.[42] This Court agrees with the *Feagan* analysis.

---

[39] *Feagan v. Townson*, 572 B.R. 785 (N.D. Ga. 2016); *In re Sires*, 511 B.R. 719 (Bankr. S.D. Ga. 2014); *In re King*, 497 B.R. 161 (Bankr. N.D. Ga. 2013); *In re Carroll*, No. 12-41350-JDP, 2013 Bankr. LEXIS 3072 (Bankr. D. Idaho Apr. 15, 2013); *In re Alexander*, No. 12-40408-jwv13, 2012 Bankr. LEXIS 3540, 2012 WL 3156760 (Bankr. W.D. Mo. Aug. 1, 2012).

[40] *In re Lopez*, 574 B.R. 159 (Bankr. E.D. Cal. 2017) (holding that a debtor could take the vehicle ownership deduction on the means test for a vehicle "refinance loan"); *In re Brunck*, No. 15-91209-BHL-13, 2016 Bankr. LEXIS 590, 2016 WL 770571 (Bankr. S.D. Ind. Feb. 24, 2016).

[41] *Feagan*, 572 B.R. 785 (N.D. Ga. 2016).

[42] *Feagan*, 572 B.R. at 789.

The Debtors cite to three cases in support of their position that the title loan qualifies them for the vehicle ownership deduction – *Lopez, Brunck,* and the lower court decision in *Feagan*.[43]

The bankruptcy court in *Feagan* held that the focus should not be on the maximum the debtor can afford but rather on what is reasonably necessary for a debtor to expend.[44] First, this statement appears to be inconsistent with *Ransom* that indeed instructed bankruptcy courts to focus on ensuring "that [debtors] repay creditors the maximum they can afford" so that creditors receive "payments that the debtor could easily make."[45] Further, the Court finds these concepts to be the opposite sides of the same coin. If debtors are only deducting reasonably necessary expenses, then they are paying the maximum they can afford.

The lower court in *Feagan* further found that allowing the full IRS car-ownership expense of $517 for a title loan payment of $51.43 furthers Congressional intent by "permit[ting] the debtor to keep the car so that he has necessary transportation."[46] The Court agrees that debtors need reasonable transportation but disagrees that allowing a $517 deduction for a $51.43 expense[47] is consist with Congressional intent. Indeed, the Means Test already allows debtors to deduct the actual payments on a vehicle loan during the life of the plan – including payments on title loans. Thus, in this case, the allowed Means Test deduction of $66.67 ensures that the Debtors will have sufficient disposable income to be able to pay for, and thus keep, their Vehicle.

The Debtors also urge the Court to adopt the reasoning of *In re Lopez* that allowed the debtor to claim the IRS car ownership expense based on a $13,500 loan on a vehicle worth $10,500

---

[43] *Feagan v. Townson*, 549 B.R. 811 (Bankr. N.D. Ga. 2016); *In re Lopez*, 574 B.R. 159 (Bankr. E.D. Cal. 2017); *In re Brunck*, No. 15-91209-BHL-13, 2016 Bankr. LEXIS 590, 2016 WL 770571 (Bankr. S.D. Ind. Feb. 24, 2016).
[44] *Feagan*, 549 B.R. 811, 819 (Bankr. N.D. Ga. 2016).
[45] *Ransom*, 562 U.S. at 71.
[46] *Feagan*, 549 B.R. at 819.
[47] *Id*. at 812.

and with a 60-month repayment term.[48] However, the Court finds *Lopez* distinguishable from the current case. First, the type of loan at issue in *Lopez* was a refinance loan that did not contain the hallmark characteristics of title loan – short-term and high-interest.[49] The loan for which Ms. Lopez sought to take the vehicle ownership deduction was not related to the purchase of the vehicle, but "resemble[d] a home equity loan," in that it was long term, was for an amount that exceeded the equity in the vehicle, and required substantial payments.[50] Therefore, for the reasons set forth above, the Court respectfully declines to follow *Lopez*.

Finally, the *Brunck* decision took a similar approach to the lower court decision in *Feagan* and *Lopez* and found that the language and calculation in Form 122C-2 gave greatest effect to every word of § 707(b)(2)(A)(ii) and (iii), and thus the IRS Collection Standards would not control.[51] The Debtors likewise contend that the Court should not look to the IRS Collection Financial Standards for guidance because the IRS uses the National and Local Standards for a different purpose than BAPCPA.

Much has been written about the incorporation of the IRS National and Local Standards into the Bankruptcy Code to determine the reasonable and necessary expenses of a Chapter 13 debtor. In spite of the direction in *Ransom* that the IRS Collection Standards might have something helpful to say, some decisions are critical of bankruptcy courts looking at the IRS Collection Financial Standards for purposes of interpreting the Bankruptcy Code. Yet, because the Code's statutory text is limited to "applicable monthly expense amounts specified under the National Standards and Local Standards," these cases nonetheless proceed to refer to other external sources

---

[48] *In re Lopez*, 574 B.R. 159 (Bankr. E.D. Cal. 2017).
[49] *Id.* at 161, n.5 (noting that a "title loan" is defined as "a short-term loan in which is the borrower's car title is used as collateral").
[50] *Id*.
[51] *In re Brunck*, No. 15-91209-BHL-13, 2016 Bankr. LEXIS 590, 2016 WL 770571 (Bankr. S.D. Ind. Feb. 24, 2016).

to understand what constitutes an applicable expense specified under the Local Standards. These external sources include legislative history suggesting that the purpose of the Means Test is to reduce judicial discretion in determining allowable expenses,[52] and the language of Official Form 122C-2.[53] Of these extra-statutory sources, this Court believes, as stated in *Ransom*, that the IRS Collection Standards is the best choice for interpretative assistance with what qualifies as a "debtor's applicable monthly expense amounts specified under the . . . [IRS] Local Standards."[54]

Limiting the vehicle ownership expense to a "lease or purchase" is only bolstered by, but not dependent upon, a reference to the IRS Collection Financial Standards, which likewise state that the "ownership costs, shown in the table below [the IRS Local Standards for Ownership Costs], provide the monthly allowances for the **lease or purchase of up to two automobiles**."[55]

Finally, and most compelling, is that allowing the Debtors a total vehicle ownership expense of $25,820 ($430.33 x 60 months), when they are only paying a maximum of $4,529[56] to clear title to their Vehicle, is not only entirely untethered from the Debtors' financial reality, but the resultant windfall to the Debtors of $25,820[57] cannot be reconciled with the intent of the Means Test. As noted in *Ransom*, the Debtor's "interpretation would run counter to the statute's overall purpose of ensuring that debtors repay creditors to the extent they can – here, by shielding some $28,000 that he does not in fact need for loan or lease payments."[58]

---

[52] *In re Kimbro*, 389 B.R. 518, 527-28 (6th Cir. BAP 2008), *rev'd and remanded*, 409 F. App'x 930 (6th Cir. 2011).

[53] *Lopez*, 574 B.R. at 170 (citing to Line 13a of Form 122C-2 in support of its holding.).

[54] § 707(b)(2)(A)(ii).

[55] Internal Revenue Serv., *Local Standards: Transportation*, IRS.Gov (Jan. 7, 2019, 9:45 AM), https://www.irs.gov/businesses/small-businesses-self-employed/local-standards-transportation (emphasis added).

[56] Debtors' plan proposes to value the Vehicle at $4,000 and repay that amount at 5% interest. Amortized over the maximum 60 months of the plan, this results in total payments of $4,529.10.

[57] The difference to unsecured creditors from allowing or denying the IRS car-ownership expense.

[58] *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 74 (2011).

For these reasons, the Court is persuaded that the statutory language of § 707(b)(2)(A)(ii), that incorporates the IRS Local Standards, coupled with the policy purposes of the Means Test as expressed in *Ransom* and the reasoning of other courts facing the same issue, support the conclusion that the Debtors in this case may not claim a vehicle ownership deduction of $497 for their claimed title loan payments of $66.67 on their Vehicle.

IV. CONCLUSION

For the reasons set forth herein, the Court determines that the Debtors in this case may not take the vehicle ownership deduction for a title loan on their vehicle. Confirmation of the Plan as proposed is denied. The Court will enter an order consistent with this Memorandum Decision. The Debtors are given reasonable time to file an amended plan consistent with the Court's ruling. If they wish, the Debtors may amend their Means Test to claim on lines 13(b) and 33(b) the payment amount of $75.48, which is the 60-month amortized payment on Check City's secured claim of $4,000 at 5% interest. A continued confirmation hearing is scheduled for February 19, 2019 at 2:00 p.m.

—ooo0ooo—

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing MEMORANDUM DECISION DENYING CONFIRMATION OF THE DEBTORS' CHAPTER 13 PLAN (DOCKET NO. 2) shall be served to the parties and in the manner designated below.

**By Electronic Service**: I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Lon Jenkins tr ecfmail@ch13ut.org, lneebling@ch13ut.org
- Mark S. Middlemas LundbergECFmail@Lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail**: In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.